**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**KRYSTEN D.,**

                **Plaintiff,**

**v.**　　　　　　　　　　　　　　　　　　　　　　**3:18-CV-1363 (NAM)**

**ANDREW M. SAUL,
Commissioner of Social Security,[1]**

                **Defendant.**
_____

**Appearances:**

Krysten D.,
*Plaintiff Pro Se*

Kristina Cohn,
Special Assistant U.S. Attorney
Social Security Administration
Office of General Counsel
26 Federal Plaza, Room 3904
New York, NY 10278-0004
*Attorney for the Defendant*

**Hon. Norman A. Mordue, Senior United States District Court Judge**

**MEMORANDUM-DECISION AND ORDER**

**I.    INTRODUCTION**

Plaintiff Krysten D. filed this action on November 26, 2018 under 42 U.S.C. § 405(g), challenging the denial of her application for supplemental security income ("SSI") under the Social Security Act ("the Act"). (Dkt. No. 1). Acting *pro se*, Plaintiff submitted a Form Complaint for appeal of a decision by the Commissioner of Social Security, requesting judicial

---

[1] Plaintiff commenced this action against the "Commissioner of Social Security." (Dkt. No. 1). Andrew M. Saul became the Commissioner on June 17, 2019 and will be substituted as the named defendant in this action. Fed. R. Civ. P. 25(d). The Clerk of Court is respectfully directed to amend the caption.

review and entry of judgment for such relief as may be proper. (*Id.*). Despite several reminders, Plaintiff failed to submit a brief in support of her appeal. The Commissioner submitted its brief on June 11, 2019. (Dkt. No. 14). After carefully reviewing the administrative record, (Dkt. No. 10), the Court reverses the decision of the Commissioner and remands for further proceedings.

## II. BACKGROUND

### A. Procedural History

Plaintiff applied for SSI benefits on July 24, 2014, alleging that she became disabled on January 1, 2014. (R. 331). The Social Security Administration ("SSA") denied Plaintiff's claim on February 12, 2015, and again on reconsideration on October 2, 2015. (R. 357, 363). Plaintiff appealed, and a hearing was held on July 14, 2017 before Administrative Law Judge ("ALJ") Peter R. Lee. (R. 297–329). On November 29, 2017, the ALJ issued a decision finding that Plaintiff was not disabled. (R. 18–30). Plaintiff's subsequent request for review by the Appeals Council was denied. (R. 2–4). Plaintiff then commenced this action. (Dkt. No. 1).

### B. Plaintiff's Background and Testimony

Plaintiff alleged that she became unable to work on January 1, 2014 due to fibromyalgia, depression, and polycystic ovarian syndrome. (R. 443). Plaintiff was born in 1978 and is a high school graduate, with past work experience as a video store clerk, café worker, and cleaning repair service worker. (R. 444, 461). She indicated that she stopped working in 2007 because she couldn't handle work and taking care of her child. (R. 443).

At the administrative hearing, Plaintiff testified that she suffers from multiple personality, dissociative disorder, anxiety with panic attacks, obsessive-compulsive disorder, and bipolar disorder. (R. 306). She said she took anti-depressant and anti-anxiety medications, which made her drowsy. (R. 307). She stated that she attended therapy once a week, which

2

helped her stress level and agoraphobia. (R. 307). Plaintiff testified that she also suffers from fibromyalgia and that muscle relaxers did not help the pain. (R. 311–12). She complained of panic attacks every other day and migraine headaches a few times a week. (R. 315–16). Plaintiff testified that she heard voices constantly, which distracted her from what she's doing. (R. 320).

Plaintiff testified that she prepared simple meals, had a friend who helped clean the home, and was able to shop for food with help from her son. (R. 321). She stated that she watched television and watched her son play video games. (R. 322). Plaintiff reported that she read ten to twelve books a month. (R. 323).

Plaintiff's friend, Wally Feliz, also submitted a form in support of her application. (R. 469). He stated that Plaintiff took care of her teenage son, although he was very self-sufficient. (R. 470). According to Mr. Feliz, Plaintiff prepared simple meals, performed household chores, shopped for groceries once a month, and managed her finances. (R. 471–72). He stated that Plaintiff enjoyed reading, watching movies, and playing video games. (R. 473). Mr. Feliz indicated that the effects of Plaintiff's medication and her pain caused her difficulties with many activities. (R. 474). He also stated that Plaintiff gets confused easily and handles stress poorly. (R. 474–75).

### C. Medical Evidence

#### 1. Dr. Anthony Candela, Neuropsychologist

On January 7, 2015, Plaintiff saw neuropsychologist Dr. Anthony Candela for an evaluation. (R. 724). She reported panic attacks and being nervous around people. (R. 724) Plaintiff relayed that she stopped outpatient therapy several months ago, and that she stopped taking her psychiatric medications due to problems with her medical insurance. (R. 724–25).

3

She stated that she lived with her boyfriend and her 15-year-old son, and she had been the victim of domestic violence by her ex-boyfriend. (R. 725).

On examination, Plaintiff had pressured and intense speech, but was alert and oriented, spoke in full sentences, and had a good fund of knowledge. (R. 725). Dr. Candela found that Plaintiff was "functioning on a Low Average Level of Intellectual Ability." (R. 725). Plaintiff denied any hallucinations, delusions, psychosis, or schizophrenia. (R. 725). Dr. Candela noted that Plaintiff's affect was stressed, her mood was anxious and agitated, and her "insight, judgment, and reasoning were limited." (R. 725–26). As to activities, she performed chores with help from her son and boyfriend, occasionally socialized with a few friends, and could travel independently, but preferred not to. (R. 726). Dr. Candela diagnosed panic attacks, without agoraphobia, generalized anxiety disorder, and depressive disorder. (R. 726).

### 2. Michael D'Adamo, State Medical Consultant

On February 10, 2015, State agency medical consultant Michael D'Adamo reviewed the evidence of record and opined that Plaintiff had a moderate restriction to activities of daily living, mild difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence, or pace, and no repeated episodes of decompensation. (R. 335). Dr. D'Adamo opined that Plaintiff could perform work that involved slower paced jobs. (R. 340).

### 3. St. Mary's Behavioral Health Services

On March 13, 2015, Plaintiff was seen at St. Mary's Behavioral Health Services for mental health treatment for complaints of anxiety, depression, rage, agoraphobia, and to reinitiate medication. (R. 728–29, 747, 750). The record lists a psychiatric diagnosis of Psychosis, with current treatment by Advanced Practice Nurse ("APN") Sharon Katz and Therapist Mirel Goldstein. (R. 728–29). Plaintiff reported auditory and visual hallucinations,

4

delusions, and frequent manic symptoms. (R. 739). On March 20, 2015, Plaintiff reported several anxiety/panic attacks and mood swings. (R. 744). On March 24, 2015, Plaintiff returned to see APN Katz. (R. 750). On examination, Plaintiff had normal speech, intact memory, fair judgment, fair insight, logical thoughts, and normal affect. (R. 752). Her mood was anxious, fearful, depressed, and cooperative. (R. 752). APN Katz diagnosed Major Depressive Disorder, Anxiety, and OCD. (R. 753).

On March 26, 2015, APN Katz assigned Plaintiff the same diagnoses and prescribed Klonopin, Cymbalta, and Seroquel. (R. 769, 777). On March 31, 2015, APN Katz reported that Plaintiff had normal speech, intact memory, fair judgment, fair insight, logical thoughts, and normal affect. (R. 778). Her mood was anxious, fearful, depressed, and cooperative. (R. 778). She reported auditory hallucinations and paranoia. (R. 778).

On April 2, 2015, Plaintiff saw her therapist at St. Mary's Behavioral Health Services and reported depression and anxiety, and it was noted that she had symptoms of dissociation. (R. 782). On April 13, 2015, Plaintiff reported decreased anxiety about leaving home. (R. 783). On April 15, 2015, APN Katz noted that Plaintiff had normal speech, intact memory, fair judgment, fair insight, logical thoughts, normal affect, and a calm and cooperative mood, but Plaintiff reported auditory hallucinations and "multiple personalities coming out more than before." (R. 786). Plaintiff was taking Klonopin, Cymbalta, Seroquel, and Zoloft. (R. 785).

On April 30, 2015, Plaintiff told APN Katz that she was not sleeping well and thought it may be from taking Zoloft. (R. 793). APN Katz discontinued Zoloft, started Plaintiff on Prozac, and increased her Seroquel dosage. (R. 793). On examination, Plaintiff had normal speech, intact memory, fair judgment, fair insight, logical thoughts, normal affect, and a cooperative

5

mood. (R. 793). Plaintiff did not show any signs of anxiety or depression, but she reported auditory and visual hallucinations. (R. 794).

### 4. Dr. Raymond Briski, State Medical Consultant

On September 2, 2015, Raymond Briski, M.D., a State agency medical consultant reviewed the record evidence and opined that Plaintiff could occasionally lift and/or carry up to 20 pounds, frequently lift and/or carry up to ten pounds, stand and/or walk about six hours in an eight-hour workday, sit about six hours in an eight-hour workday, and had unlimited pushing and/or pulling ability, other than shown for lifting and/or carrying. (R. 350). Dr. Briski opined that Plaintiff had no postural, manipulative, and environmental limitations. (R. 350). The doctor noted that Plaintiff's asthma and high blood pressure were controlled by medication. (R. 351). He also noted that Plaintiff had not followed up with a rheumatologist. (R. 351).

### 5. Paul Fulford Ph.D., Consultative Examiner

On September 25, 2015, Plaintiff saw Paul Fulford, Ph.D., a consultative examiner, for a psychiatric examination. (R. 798). Plaintiff reported that she was hospitalized in 2006 for "being suicidal." (R. 799). Plaintiff was cooperative and fully oriented, had clear and goal directed speech, but reported a depressed mood. (R. 799). Plaintiff alleged auditory hallucinations, but stated that she tried to ignore them, and visual hallucinations that were "mostly shadows." (R. 799). Dr. Fulford reported that Plaintiff had normal intelligence, good motivation, good concentration, and good abstract thinking. (R. 799). Dr. Fulford diagnosed major depressive disorder. (R. 800).

### 6. Pamela Foley Ph.D., State Medical Consultant

On October 2, 2015, State agency medical consultant Pamela Foley, Ph.D. reviewed Plaintiff's medical records and opined that she had a moderate restriction to activities of daily

6

living, mild difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence, or pace, and no repeated episodes of decompensation. (R. 348). Dr. Foley opined that Plaintiff could perform work that involved slower paced jobs. (R. 353).

### 7. Hospital Records

On July 28, 2014, Plaintiff was admitted to St. Michael's Medical Center for evaluation of abdominal pain, and she was treated for acute enteritis. (R. 611). On examination, Plaintiff was alert and fully oriented. (R. 611). She denied any suicidal thoughts and had an intact memory. (R. 616, 618). Plaintiff had no focal or sensory deficits. (R. 618).

On October 3, 2015, Plaintiff went to the emergency room at St. Joseph's Hospital, complaining of wheezing and chest congestion. (R. 802). On examination, Plaintiff was alert, cooperative, and fully oriented. (R. 803, 811). She had full range of motion in the extremities with no pain, swelling, or tenderness. (R. 804). Plaintiff's chest X-ray was normal. (R. 816).

On December 8, 2015, Plaintiff went to the emergency room at St. Joseph's Hospital, complaining of an abscess of the right arm, headaches, and right-sided weakness. (R. 817). On examination, Plaintiff was alert and fully oriented. (R. 818). She had full strength and range of motion throughout the extremities and was neurologically intact. (R. 818–19). A CT scan of the head was normal. (R. 820). The attending physician diagnosed cellulitis. (R. 821).

On May 3, 2016, Plaintiff returned to the emergency room, complaining of neck pain. (R. 831). She alleged that her boyfriend grabbed her hair and twisted her head. (R. 831). Plaintiff stated that she was safe now and her boyfriend was in jail. (R. 831). On examination, Plaintiff was alert and fully oriented, and neurologically intact. (R. 832). She had full strength throughout the extremities, an intact gait, normal reflexes, and intact sensation. (R. 833). An X-

ray of Plaintiff's cervical spine was normal. (R. 843). The attending physician diagnosed cervical sprain. (R. 835).

On August 15, 2016, Plaintiff returned to the emergency room, complaining of headaches and a right ankle injury. (R. 845). On examination, Plaintiff was alert and fully oriented. (R. 846). She was neurologically intact and had full strength and sensation throughout the extremities. (R. 847). An X-ray of the right ankle was negative for any fracture. (R. 848). The attending physician placed Plaintiff's ankle in an air cast and provided crutches. (R. 848).

### D. ALJ Decision Denying Benefits

On November 29, 2017, the ALJ issued a decision denying Plaintiff's application for disability benefits. (R. 18–30). At step one of the five-step evaluation process, the ALJ determined that Plaintiff had not engaged in gainful employment since July 24, 2014, her application date. (R. 20).

At step two, the ALJ determined that, under 20 C.F.R. § 416.920(c), Plaintiff had four "severe" impairments: myopathy, obesity, depressive disorder, and anxiety disorder. (R. 21). At step three, the ALJ found that, while severe, Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925, and 416.926). (R. 21).

At step four, the ALJ determined that Plaintiff:

> Has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except never climb ropes, ladders or scaffolds; never be exposed to unprotected heights or hazardous machinery; occasionally climb stairs and ramps; never crawl; occasionally stoop and crouch; occasional contact with the public; and able to do only simple and routine tasks.

8

(R. 24). The ALJ noted Plaintiff's testimony that she was limited by depression, anxiety, bipolar disorder, social disorder or panic attacks, obsessive-compulsive disorder, headaches, and fibromyalgia. (R. 24). The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are generally [not] consistent with the medical evidence and other evidence in the record." (R. 25). The ALJ reviewed the medical evidence, including various opinions, and concluded that Plaintiff's RFC was supported "by the appropriate weight given the assessments and/or findings of Dr. Candela, Dr. Fulford, Dr. Briski, and Dr. Grinchenko." (R. 28). The ALJ's step four analysis concluded that Plaintiff had no past relevant work. (R. 28).

Finally, at step five, having evaluated Plaintiff's medical limitations, the ALJ found that "[c]onsidering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a))." (R. 29). The ALJ cited the testimony of the vocational expert, who testified at the hearing that an individual in Plaintiff's position would be able to perform the requirements of occupations including ticket tagger, garment folder, and labeler. (R. 29). Based on the testimony of the vocational expert, the ALJ concluded that "considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (R. 30). Therefore, the ALJ found Plaintiff not disabled under Section 1614(a)(3)(A) of the Social Security Act. (R. 30).

### III. DISCUSSION

#### A. Disability Standard

To be considered disabled, a claimant must establish that he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). In addition, the claimant's impairment(s) must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 1382c(a)(3)(B).

The SSA uses a five-step process to evaluate disability claims:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which meets or equals the criteria of an impairment listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him [*per se*] disabled . . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant can perform.

*Selian v. Astrue*, 708 F.3d 409, 417–18 (2d Cir. 2013) (quoting *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012)); *see also* 20 C.F.R. §§ 404.1520, 416.920. The Regulations define residual functional capacity ("RFC") as "the most you can still do despite your limitations," including limitations on physical and mental abilities. 20 C.F.R. §§ 404.1545, 416.945.

In assessing the RFC of a claimant with multiple impairments, the Commissioner considers all "medically determinable impairments, including . . . medically determinable impairments that are not 'severe.'" *Id*. §§ 404.1545(a)(2), 416.945(a)(2). The claimant bears the initial burden of establishing disability at the first four steps; the Commissioner bears the burden at the last. *Selian*, 708 F.3d at 418.

### B. Standard of Review

In reviewing a final decision by the Commissioner under 42 U.S.C. § 405, the Court does not determine *de novo* whether Plaintiff is disabled. Rather, the Court must review the administrative record to determine whether "there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citation omitted).

When evaluating the Commissioner's decision, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Selian*, 708 F.3d at 417 (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1038 (2d Cir. 1983)). The Court may set aside the final decision of the Commissioner only if it is not supported by substantial evidence or if it is affected by legal error. 42 U.S.C. § 405(g); *Selian*, 708 F.3d at 417; *Talavera*, 697 F.3d at 151; *Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir. 2008). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 447–48 (2d Cir. 2012) (quoting *Moran*, 569 F.3d at 112).

Plaintiff is *pro se* and has not filed a brief in support of her position. However, she was represented by counsel from New Jersey Legal Services during her application for benefits, and the record contains a letter from counsel to the Appeals Council challenging the ALJ's decision.

11

(R. 510–12). In deference to Plaintiff's *pro se* status and out of an abundance of caution, the Court will consider the arguments asserted in that letter, and overall, whether the ALJ's decision is supported by substantial evidence. *See also Corbiere v. Berryhill*, 760 F. App'x 54, 56 (2d Cir. 2019); *John W. v. Commr. of Soc. Sec.*, No. 18 Civ. 177, 2019 WL 428785, at *7; 2019 U.S. Dist. LEXIS 17231, at *22 (N.D.N.Y. Feb. 4, 2019).

### C. Analysis

Plaintiff challenged the ALJ's decision on two grounds: 1) "The ALJ decision did not analyze the effects of several documented impairments and symptoms when making its symptom and residual functional capacity findings"; and 2) "The ALJ abused his discretion and committed legal error in finding no good cause to consider post-hearing evidence." (R. 510). Among other things, Plaintiff argued that the ALJ's RFC did not account for all her mental health symptoms, which include panic attacks, anxiety, manic episodes, and visual and auditory hallucinations, and would cause her to be off-task and miss work. (R. 511).

The Commissioner contends that substantial evidence supports the ALJ's RFC finding. (Dkt. No. 14, p. 17). The Commissioner points to evidence that: 1) Plaintiff's depression and anxiety improved with treatment (R. 26, 307, 520, 534); and 2) Plaintiff had clear speech, average intelligence, fair-to-good insight, intact thoughts, good judgment, intact attention/ concentration, good abstract thinking, and intact memory (R. 520, 525, 542, 600, 606–07, 616, 618, 655, 672, 677, 725, 752, 777–78, 786, 794, 799). And the Commissioner argues that the ALJ properly accorded great weight to "Dr. D'Adamo's and Dr. Foley's opinions that Plaintiff could perform work that involved slower paced jobs, which was consistent with the ALJ's mental RFC finding." (Dkt. No. 14, p. 18) (citing R. 24, 28, 340, 353).

12

The mental portion of the RFC states that Plaintiff can have "occasional contact with the public" and is "able to do only simple and routine tasks." (R. 24). This finding appears to be based on Plaintiff's depression and anxiety impairments. The decision does not address the evidence supporting additional diagnoses of Psychosis and Bipolar Disorder, (R. 599, 728, 755), or the potential implications for her RFC. Notably, there is no assessment of whether Plaintiff would be off-task or miss work due to her mental health symptoms. Although the ALJ gave great weight to the opinion of Dr. Candela, the RFC does not appear to account for Dr. Candela's finding that Plaintiff's "insight, judgment, and reasoning were limited." (R. 725–26). Similarly, the ALJ gave great weight to the opinions of Drs. D'Adamo and Foley, but the RFC does not reconcile their findings that Plaintiff had moderate difficulties in maintaining concentration and persistence. (R. 335, 348).

According to the Regulations, the RFC must "identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 CFR 404.1545 and 416.945." SSR 96-8P. Among those functions are mental abilities:

> When we assess your mental abilities, we first assess the nature and extent of your mental limitations and restrictions and then determine your residual functional capacity for work activity on a regular and continuing basis. A limited ability to carry out certain mental activities, such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, coworkers, and work pressures in a work setting, may reduce your ability to do past work and other work.

20 C.F.R. § 404.1545(c), 416.945(c). In addition, "[t]he mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments, and summarized on the PRTF."

13

SSR 96-8P. Here, the ALJ recognizes that Plaintiff has severe mental health impairments, but the RFC does not identify their impact with a detailed function-by-function assessment.

The mental portion of the RFC is also flawed because it does not account for Plaintiff's most recent treatment. Plaintiff argued that the ALJ ignored evidence from St. Mary's Hospital, which was received after the hearing. (R. 512). The ALJ's decision, dated November 29, 2017, states that "the claimant and her representative did not inform me about evidence from St. Mary's General Hospital and other evidence received on September 19, 2017." (R. 18). Therefore, the ALJ did not consider this additional evidence. (*Id.*). However, Plaintiff's counsel sent the ALJ a letter regarding this evidence on June 20, 2017, (R. 513–15), well before the hearing on July 14, 2017. According to Plaintiff's counsel, "the claimant, who has a mental disability affecting her memory, only told him of additional St. Mary's treatment in June 2017," and counsel worked diligently to obtain the records, "but due to delays from the provider they were only received on September 19, 2017." (R. 512).

The additional records from St. Mary's General Hospital Behavioral Health Services consist of over two-hundred pages and cover treatment in late 2015 and 2016. (R. 40–293). These records also appear to show that Plaintiff underwent extensive out-patient treatment for her mental health conditions, which were getting worse. The ALJ's decision, on the other hand, only cites St. Mary's records from March and April of 2015. (R. 26). The ALJ found that Plaintiff's symptoms were controlled by medication and that her depression and anxiety had improved overall. (R. 26). Thus, the ALJ's finding is directly contradicted by Plaintiff's most recent treatment, which he did not consider.[2]

---

[2] Plaintiff was seen by APN Katz and the therapist, Ms. Goldstein. (*See, e.g.*, R. 125). Neither is mentioned in the ALJ's decision. As Plaintiff's treating providers, they would be logical candidates to assess her mental abilities and limitations.

14

In sum, the ALJ's decision is not supported by substantial evidence because it overlooked the most recent evidence from St. Mary's Hospital and did not adequately assess the functional limitations imposed by Plaintiff's mental health conditions. The Court finds that remand is appropriate in this case for the ALJ to properly determine Plaintiff's RFC based on all of the record evidence. As part of that process, the ALJ should also specifically explain how the medical evidence relating to Plaintiff's mental limitations translates into the RFC. *See also Estrella v. Berryhill*, 925 F.3d 90 (2d Cir. 2019).

### IV. CONCLUSION

For the foregoing reasons it is

**ORDERED** that the decision of the Commissioner is **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for proceedings consistent with this Memorandum-Decision & Order; and it is further

**ORDERED** that the Clerk of the Court provide a copy of this Memorandum-Decision and Order to the parties in accord with the Local Rules of the Northern District of New York; and it is further

**ORDERED** that the Clerk of the Court is directed to close this case.

**IT IS SO ORDERED.**

Date: January 7, 2020
Syracuse, New York

Norman A. Mordue
Senior U.S. District Judge